FILED
SUPERIOR COURT
OF GUAM

2023 OCT 27 PM 12: 37

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DFS GUAM L.P., <br><br> Plaintiff, <br><br> v. <br><br> THE ANTONIO B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM, and DOES 1-10, INCLUSIVE, <br><br> Defendants. | CIVIL CASE NO. CV0943-14 <br> (Consolidated with CV0094-15 and CV0198-15) <br><br><br> **DECISION AND ORDER** <br> ***Re: DFS Guam L.P's Motion for Order to Lotte Duty Free Guam, LLC to Show Cause Why It Should Not Be Held in Contempt for Failing to Comply with the Court's December 22, 2017 Order*** |

This matter came before the Honorable Arthur R. Barcinas on July 27, 2023, for a hearing on Plaintiff DFS Guam L.P's ("DFS") January 22, 2018 Motion for Order to Lotte Duty Free Guam, LLC to Show Cause Why It Should Not Be Held in Contempt for Failing to Comply with the Court's December 22, 2017 Order. Attorneys Kahn Scolnick, Maurice Suh, Jay Srinivasan, and G. Patrick Civille were present for DFS. Attorneys Steven Madison and Caesar Cabot represented Lotte, and Attorneys Genevieve Rapadas and E. Christian Calvo were present for Defendant A.B. Won Pat Guam International Airport Authority, Guam ("GIAA").

# BACKGROUND

This case arises from a procurement dispute between DFS and GIAA. On June 16, 2016, DFS served Lotte Duty Free Guam, LLC ("Lotte Guam") with a Guam Rules of Civil Procedure ("GRCP") Rule 45 subpoena requesting that Lotte Guam produce documents. Lotte Guam served its objections to the subpoena on June 29, 2016. On July 1, 2016, Lotte Guam filed a Motion to Quash DFS' Subpoena for the Production of Documents and for a Protective Order. On April 27, 2017, the Court heard Lotte Guam's Motion to Quash. On May 1, 2017, the Court issued a decision and order denying Lotte Guam's Motion to Quash. On May 8, 2017, DFS filed a Motion for an Order Enforcing the Court's May 1, 2017 Decision and Order and Awarding DFS its Costs and Attorney Fees. ("Motion to Enforce"). On May 10, 2017, Lotte Guam filed a Motion to Reconsider as part of its opposition to DFS's *Ex Parte* Application to Shorten Time for Hearing on DFS's Motion to Enforce. On May 18, 2017, Lotte Guam filed its opposition to the Motion to Enforce. On May 5, 2017, the Court heard DFS's Motion to Enforce and Lotte Guam's Motion to Reconsider. On June 2, 2017, the Court issued an Order After Hearing denying both motions for being procedurally deficient.

On October 11, 2017, DFS filed it Motion for Order to Lotte Duty Free Guam, LLC to Show Cause Why It Should Not Be Held in Contempt for Failing to Comply with Subpoena for the Production of Documents and the Court's May 1, 2017 Decision and Order ("First Motion for OSC"). On November 8, 2017, Lotte Guam filed its opposition, and on November 22, 2017, DFS filed its reply. On December 7, 2017, the Court heard the First Motion for OSC and took the matter under advisement.

On December 22, 2017, the Court issued its Decision and Order, finding that Lotte was under no obligation to act on DFS's subpoena at the time because the Court's May 1, 2017 order did

not direct compliance and therefore DFS's request for Lotte Guam to be held in contempt and for sanctions was premature. The Court consequently denied the First Motion for OSC, but also issued an order to compel, finding that Lotte Guam held sufficient "control" over the documents in Lotte Korea's possession and directing Lotte Guam to produce by January 5, 2018, all documents responsive to DFS's subpoena held by Lotte Korea.

On January 8, 2018, DFS's counsel received a box of documents from Lotte Guam's counsel. DFS alleged that, while the documents Bates numbers ran from LDFG009631 to LDFG011483, many of the pages were not in sequential order and the production had unexplained gaps in the Bates numbers. According to DFS, Lotte produced in total 1,762 pages of documents. On January 8, 2018, Lotte Guam filed a Notice to Court Re Compliance With December 22, 2017 Decision and Order, in which it informed the Court it had produced 1,948 pages of documents. Lotte Guam contends in its opposition that, after the instant motion was filed, its counsel made a replacement copy of counsel's own hard copy and delivered it to DFS's counsel after verifying that the production contained exactly 1,948 pages and that any potential issues with Bates number ranges were not actually due to missing documents but to technical issues.

On January 22, 2018, DFS filed the instant Motion for Order to Lotte Duty Free Guam, LLC to Show Cause Why It Should Not Be Held in Contempt for Failing to Comply with the Court's December 22, 2017 Order ("Motion for OSC"). In the instant motion, DFS alleged that Lotte Guam and Lotte Korea had spoliated documents and failed to produce all documents responsive to DFS's subpoena as ordered by the Court. DFS stated that Lotte Guam's production of documents largely consisted of documents that had been previously produced by GIAA or other sources. Lotte claimed that it was unable to produce relevant emails, internal

communications, and other documents relevant to DFS's protest that would solely be in the possession of Lotte Korea or Lotte Guam. DFS asserted that Lotte had not produced any communication regarding the actual drafting of its proposal, presentation or letters to GIAA, nor any emails from any of the Lotte Korea employees assigned to Guam.

DFS now seeks adverse inference sanctions against Lotte Guam for allegedly failing to preserve relevant documents. DFS states that the circumstances support an adverse inference that the lost or destroyed documents were relevant and favorable to DFS on the following issues:

1. Lotte's intent in meeting with GIAA Board member Francisco G. Santos on August 16, 2012 was to influence Mr. Santos to help Lotte win the RFP.

2. Lotte's intent in hiring consultants who had existing personal and business relationships with GIAA's board members, staff or outside counsel was to influence those GIAA board members or staff or outside counsel to help Lotte win the RFP.

3. Lotte intended to pay success fees to Anthony Sgro and Joseph Cruz.

4. Lotte intended to present a minimum annual guaranteed rent ("MAG") offer during its November 29, 2012 RFP presentation that was increased from its MAG offer in its October 17, 2012 RFP proposal, in order to influence the GIAA evaluation committee.

5. Lotte's intent in offering to renovate the Guam Airport's bathrooms, food court, and smoking lounge, and install a children's play area and Internet station, was to make offers outside of the scope of the RFP.

6. Lotte's intent in negotiating the financial terms of its purported RFP contract with GIAA was to provide the increased MAG rent that it had offered during its November 29, 2012 presentation to the GIAA evaluation committee.

7. Lotte's intent in issuing press releases regarding DFS's protests and DFS's subsequent lawsuit was to proliferate negative publicity against DFS.

On July 18, 2023, Lotte Guam filed its opposition. On July 25, 2023, DFS filed its reply.

## DISCUSSION

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve properly for another's use as evidence in pending or reasonably foreseeable litigation. *Reeves v. MV Transportation, Inc.*, 111 Cal.Rptr.3d 896, 909 (Cal. App. 2010). Spoliation of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction. *Id.*

Because spoliation is a rule of evidence, the decision to impose sanctions for violations is one administered at the discretion of the trial court. *See, e.g., Turner v. U.S.*, 736 F.3d 274, 281 (4th Cir. 2013). In order for an adverse inference to arise from spoliation, the party having control over the evidence must have had a duty to preserve it at the time it was destroyed. *Reeves*, at 909. The duty to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party reasonably should have known that the evidence may be relevant to future litigation. *Fujitsu Ltd. V. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). Once the duty to preserve attaches, a party must suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation. *See, e.g. Victor Valley Union High School Dist. v. Superior Ct. of San Bernardino Cty.*, 309 Cal.Rptr.3d 258, 273-274 (Cal. App. 2023). Only a minimum link of relevance is required to permit a fact-finder to draw an adverse inference. *Akiona v. U.S.*, 938 F.2d 158, 161 (9th Cir. 1991). The party seeking to introduce evidence of spoliation need not establish bad faith on the part of the party who

destroyed the evidence. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). A finding of bad faith will suffice, but so will a simple notice of potential relevance to the litigation. *Id.*

Lotte Guam argues that it is not a party in this case and that, as a third party, it has no duty to preserve evidence for others. Opp., at 5 (citing *Pettit v. Smith*, 45 F. Supp. 3d 1099, 1106 (D. Ariz. 2014). However, upon review of *Pettit*, the court in that case found that the third party did have a duty to preserve because it was not found to be a disinterested third party, and it had complete control over relevant evidence in that case, the plaintiff's ability to access said evidence, and the defendant's ability to preserve said evidence. The Court finds Lotte Guam to be in a similar situation. Not only has Lotte Guam been the bottleneck for all evidence of communication between the Lotte entities and GIAA in this case, it was also one of the original parties at the outset of this litigation. It may not technically be a party in name, but it is most definitely so in nature. As such, the Court finds that a duty to preserve did attach to Lotte Guam at the moment it should have reasonably known that litigation was pending,

**II. Lotte's duty to preserve began on May 3, 2013, upon notice from GIAA**

DFS asserted in its motion that both Lotte Guam and Lotte Korea were on notice to preserve relevant documents since at least May 3, 2013, when GIAA emailed them with instructions to preserve all documents and electronically stored information potentially relevant to the protest. In its opposition, Lotte Guam stated that "DFS alleges this May 3, 2013 letter [from GIAA] was a 'notice[]' to Lotte Guam to preserve documents, but never mentions that the request was limited to documents 'potentially relevant to the Protest.'" Lotte Guam asserted that the protest in question is DFS's April 23, 2013 Protest regarding the Guam Visitors Bureau delegation to Korea, and that therefore all documents "potentially relevant to the Protest" were ones that related to the delegation's visit to the Lotte store and any gifts allegedly provided there.

The Court finds that, upon receipt of GIAA's instructions on May 3, 2013, Lotte Guam was on reasonable notice to preserve any and all documents related to potential litigation regarding the retail concession agreement bid. Upon receipt of the aforementioned instructions, Lotte should therefore have preserved all documents in its possession related to that matter, not merely those related to the GVB delegation's visit.

Lotte Guam maintained that it was not explicitly put on notice of any duty to preserve its documents until June 16, 2016 when DFS served it with a subpoena. The Court disagrees. Lotte Guam subsequently claimed that it had a standard three-year retention policy for all electronic documents, other than financial information, which is kept for five years. Lotte asserted that this policy is relevant because DFS allegedly did not actually serve notice regarding the full scope of its document requests until three years after the RFP process. Lotte Guam also claimed that its standard email storage limit is 1 gigabyte, and when an email account reaches that limit, the company's standard practice is to delete messages to make room. The Court does not find this to be a reasonable excuse, because a party must suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation. *See Victor Valley Union High School*, at 273-274; *K.J.P. v. County of San Diego*, 621 F.Supp.3d 1097, 1138 (S.D. Cal. 2022). Having received reasonable knowledge of potential litigation via the 2013 GIAA letter, Lotte Guam should have retained any and all documents dating back to May 2010, and suspended all deletion and destruction policies regarding all GIAA- and Guam-related material until the matter was resolved.

Lotte Guam also stated that its search for documents in response to the 2016 DFS subpoena yielded 540 documents that it considered responsive, and that it requested documents from Lotte Hotel Guam and Lotte USA, which had no responsive documents in their possession.

The Court notes that Lotte Guam did not mention any requests from Lotte Korea, and finds this to weigh heavily against Lotte Guam's argument, the Court's position regarding the unity of interests between Lotte Guam and Lotte Korea having been established in its December 22, 2017 decision.

## II. Adverse inferences are an appropriate sanction in this matter.

In addition to demonstrating a duty to preserve the evidence, the party seeking the benefit of an inference from spoliation of evidence must also demonstrate that the records were destroyed with a culpable state of mind, and that the destroyed records were relevant to the party's claim or defense. *Reeves*, 186 Cal.App.4th, at 681-682. In *Apple Inc. v. Samsung Electronics Co., Ltd.*, Samsung was found to demonstrate the necessary culpable state of mind when it maintained its auto-delete policy despite litigation with Apple being "reasonably foreseeable. *Apple*, 881 F.Supp.2d 1132, 1146 (N.D. Cal. 2012). That court found that, while Samsung may not have acted in bad faith, "[a]ll that the court must find is that Samsung acted with a 'conscious regard' of its obligations." *Id.*, at 1147. Samsung failed to send litigation hold notices when its duty to preserve relevant evidence arose, and also failed to follow up with employees as to whether they had complied with the given directives, and maintained its auto-delete policy at all times. That court found this behavior more than sufficient to show willfulness. The Court finds Lotte's behavior in this matter to similarly demonstrate a culpable state of mind.

The record having yielded sufficient evidence of reasonable notice regarding the pending litigation, the Court finds that Lotte Guam bore the duty to preserve upon reception of GIAA's May 2013 instructions. The Court further finds that GIAA's instructions and the fact that the destroyed documents were pertinent to the protest provide sufficient cause to establish a minimal

link of relevance between said documents and DFS's claims. Therefore, the Court finds that Lotte's failure to preserve said documents is tantamount to spoliation. As established in the Court's December 22, 2017 decision, Lotte Guam also had control over the documents at the time of their spoliation. These two factors are sufficient to issue adverse inference sanctions against Lotte Guam for the spoliation of said documents, and the Court finds that Lotte Guam's document destruction policy is not a sufficient defense against the spoliation allegations.

## CONCLUSION

In light of the foregoing, the Court will issue adverse inference sanctions against Lotte Guam. The Court finds that the circumstances support an adverse inference that the lost or destroyed documents were relevant and favorable to DFS on the following issues:

1. Lotte's intent in meeting with GIAA Board member Francisco G. Santos on August 16, 2012 was to influence Mr. Santos to help Lotte win the RFP.

2. Lotte's intent in hiring consultants who had existing personal and business relationships with GIAA's board members, staff or outside counsel was to influence those GIAA board members or staff or outside counsel to help Lotte win the RFP.

3. Lotte intended to pay success fees to Anthony Sgro and Joseph Cruz.

4. Lotte intended to present a minimum annual guaranteed rent ("MAG") offer during its November 29, 2012 RFP presentation that was increased from its MAG offer in its October 17, 2012 RFP proposal, in order to influence the GIAA evaluation committee.

5. Lotte's intent in offering to renovate the Guam Airport's bathrooms, food court, and smoking lounge, and install a children's play area and Internet station, was to make offers outside of the scope of the RFP.

6. Lotte's intent in negotiating the financial terms of its purported RFP contract with GIAA was to provide the increased MAG rent that it had offered during its November 29, 2012 presentation to the GIAA evaluation committee.

7. Lotte's intent in issuing press releases regarding DFS's protests and DFS's subsequent lawsuit was to proliferate negative publicity against DFS.

**IT IS SO ORDERED** this day of _____ OCT 2 7 2023 _____.


**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**